**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
JOY WEINSTEIN,                :   CIVIL ACTION NO. 09-323 (MLC)
                              :
     Plaintiff,              :   **MEMORANDUM OPINION**
                              :
     v.                       :
                              :
MICHAEL J. ASTRUE, COMMISSIONER, :
SOCIAL SECURITY ADMINISTRATION, :
                              :
     Defendant.              :
                              :
```

**COOPER, District Judge**

The plaintiff, Joy Weinstein, applies for judicial review of the final decision of the defendant, the Commissioner of the Social Security Administration ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB").  (Dkt. entry no. 1, Compl.)  The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g).  The Court, for the reasons stated herein, will affirm the Commissioner's decision.

BACKGROUND

The plaintiff filed a claim for DIB on May 26, 2004, alleging that she became unable to work on August 1, 2003. (Administrative Record ("A.R.") at 66.)  The Commissioner denied the claim on July 19, 2004, and upon reconsideration on December 7, 2004.  (<u>Id.</u> at 26, 33.)  The plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (<u>Id.</u> at 36.) An ALJ conducted a hearing on August 4, 2006, and a supplemental

hearing on October 19, 2006.  (Id. at 565-628.)  The plaintiff was represented by counsel at both hearings.  (Id. at 565, 604.)

The ALJ issued a decision on December 12, 2006, finding, inter alia, that the plaintiff (1) "meets the insured status requirements of the Social Security Act through December 31, 2008"; (2) "has not engaged in substantial gainful activity since August 1, 2003," the alleged onset date of disability; (3) "has the following severe impairments:  major depression and right shoulder tendonitis (20 C.F.R. 404.1520(c))"; (4) "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)"; (5) "has the residual functional capacity to perform any level of exertional work, but must work at a job that has no contact with the public and only limited contact with co-workers and supervisors.  The job also must be low stress involving simple, repetitive tasks.  She cannot lift the right upper extremity above the parallel"; (6) "is unable to perform any past relevant work (20 CFR 404.1565)" as an administrative assistant "because it involved regular interaction with the public and co-workers and was highly stressful"; (7) "was forty-two years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563)"; (8) "has at least a high school education and is able to communicate in

English (20 CFR 404.1564)"; and (9) "has not been 'under a disability,' as defined in the Social Security Act, from August 1, 2003 through the date of this decision (20 C.F.R. § 404.1520(g)." (Id. at 12-22.)  The ALJ further found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is 'not disabled,' whether or not the [plaintiff] has transferable job skills," and that considering the plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1560(c) and 404.1566)." (Id. at 22.)

The ALJ concluded that the plaintiff was not entitled to DIB payments. (Id. at 23.)  The plaintiff requested review of the ALJ's decision by the Appeals Council on December 15, 2006. (Id. at 564.)  The Appeals Council denied the plaintiff's request for review on November 24, 2008. (Id. at 6.)  The plaintiff applied for review here on January 23, 2009. (Dkt. entry no. 1.)

The Court dismissed the Complaint for lack of prosecution pursuant to Local Civil Rule 9.1 on May 21, 2009. (Dkt. entry no. 6, 6-21-09 Order & J.)  On July 23, 2009, the Court granted the plaintiff's motion to vacate that Order and Judgment, permitted the plaintiff to file a brief, and reopened the action. (Dkt. entry no. 13, 7-23-09 Order; see dkt. entry no. 16, Pl.

3

Br.)   The Commissioner filed a brief in opposition on October 22,
2009.   (Dkt. entry no. 17, Def. Br.)   The plaintiff has not filed
a brief in reply.   Pursuant to the Court's July 23, 2009 Order,
the plaintiff is deemed to have waived the opportunity to reply,
and the matter is ripe for disposition.

**DISCUSSION**

**I.   Standard Of Review**

The Court may review a "final decision of the Commissioner of
Social Security" in a disability proceeding.   42 U.S.C. § 405(g).
The Court may affirm, modify, or reverse the Commissioner's
decision with or without remanding the case for a rehearing.   Id.
However, this judicial review is limited.   The Court must affirm
the Commissioner's decision regarding disability benefits if an
examination of the record reveals that the findings of fact are
supported by substantial evidence.   Id.; Reefer v. Barnhart, 326
F.3d 376, 379 (3d Cir. 2003).   "Substantial evidence" in the
context of a social security matter is defined as less than a
preponderance of the evidence but "more than a mere scintilla,"
i.e., such evidence "as a reasonable mind might accept as
adequate to support a conclusion."   Richardson v. Perales, 402
U.S. 389, 401 (1971) (quotation and citations omitted).   This
standard "is deferential and includes deference to inferences
drawn from the facts if they, in turn, are supported by
substantial evidence."   Schaudeck v. Comm'r of Soc. Sec. Admin.,
181 F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions under this standard, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting that decision.  Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995).  The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion.  Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility For Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the

individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled." In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Id. at § 404.1520(b). If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step. Id. at § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions. Id. at §§ 404.1521(a)-(b), 416.921(a)-(b). A claimant not meeting this requirement is not disabled. Id. at § 404.1520(c). Thus, the second step requires a threshold-level demonstration of severe impairment without

consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR. 20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. at § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  Id. at § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. at § 404.1520(a)(4)(iv). The claimant, if able to resume the previous work, will not be considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. at §§ 404.1520(a)(4)(v), 404.1520(e). This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. at § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

**III. Analysis of The Plaintiff's Claim**

The plaintiff argues that the ALJ's findings are not supported by substantial evidence.  (Pl. Br. at 13-20.) Specifically, the plaintiff argues that the ALJ erred by (1) "almost completely overlook[ing] the testimony of two key fact witnesses, Michael Sharenow, [plaintiff's] live-in boyfriend, and Jed Weinstein, [plaintiff's] brother," contrary to 20 C.F.R. § 1527(b) (requiring adjudicator to consider medical opinions together with the rest of the relevant evidence received); (2) "fail[ing] to consider the complete testimony of the vocational expert," specifically questions posed by plaintiff's attorney; (3) failing to give controlling weight to the opinion of Dr. Rhonda Rapps, the plaintiff's treating psychologist; and (4) improperly rejecting the plaintiff's statements regarding her condition.  (Id.)  The Commissioner argues, by contrast, that the "decision that plaintiff is not disabled is supported by substantial evidence in the record, and is based upon the

8

application of the correct legal standards." (Dkt. entry no. 17, Def. Br. at 1.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects." Plummer, 186 F.3d at 429. The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice. Id. The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quotation and citation omitted). This policy allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.), reh'g denied, 650 F.2d 481 (3d Cir. 1981). The Court, without an indication as to what evidence the ALJ considered or rejected, "cannot tell if significant probative

9

evidence was credited or simply ignored." Id.  Although the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," the ALJ's findings must provide "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

The Court need not examine the ALJ's step one determination that the plaintiff has not engaged in work activity after her alleged disability onset date. (See A.R. at 14.)  The plaintiff does not challenge the ALJ's finding at step two that the plaintiff suffered from two severe impairments, major depression and right shoulder tendonitis.  (Id.)[1]  The plaintiff also does not challenge the ALJ's finding at step three that she did not automatically qualify as disabled under any "listed impairment," specifically looking to Listing 12.04, Affective Disorders, and 1.02, Major Dysfunction of a Joint.  (Id. at 14-15; Pl. Br. at 16-17.)  See 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step four is not in dispute to the extent that the ALJ agreed with the plaintiff's position that she could not perform any past relevant work.  (A.R. at 21.)  However, the plaintiff objects to the ALJ's determination of her RFC and the ALJ's ultimate finding at step five that "there are jobs that exist in significant numbers in the national economy that the [plaintiff]

---

[1] The plaintiff's right shoulder tendonitis is not at issue in this appeal.  (See Pl. Br.)

10

can perform."  (Id. at 21; see Pl. Br. at 22 (concluding that
"the ALJ's decision that Ms. Weinstein would be capable of
adjusting to other types of work lacks substantial evidence").)
Therefore, the Court will address the ALJ's determinations at
step four and step five of the sequential analysis.

The plaintiff contends that the ALJ erred in determining her
RFC.  (Pl. Br. at 13-22.)  The ALJ found that the plaintiff "has
the residual functional capacity to perform any level of
exertional work, but must work at a job that has no contact with
the public and only limited contact with co-workers and
supervisors.  The job also must be low stress involving simple,
repetitive tasks."  (A.R. at 15.)  The plaintiff raises several
objections to the ALJ's RFC determination, which the Court
addresses below.

### A.   ALJ's Consideration of Witness Testimony

The plaintiff contends that the ALJ "almost completely
overlooked the testimony of two key fact witnesses," her brother
and her live-in boyfriend, in determining that the plaintiff's
RFC allowed her to work.  (Pl. Br. at 13-14.)  The plaintiff
argues that the ALJ's "conclusory" treatment of these witnesses'
testimony contravenes the requirements of 20 C.F.R. §
404.1527(c), which requires an adjudicator of a disability claim
to "review all of the evidence relevant" to the claim, "including
medical opinions."  (Pl. Br. at 14.)

11

The Court finds that the ALJ properly considered the testimony of these two witnesses, and was not "required to supply a comprehensive explanation for the rejection of" their testimony.  <u>Cotter</u>, 650 F.2d at 482.  The ALJ noted that the plaintiff's live-in boyfriend testified that the plaintiff "is often difficult to get along with." (A.R. at 20.)  The ALJ also considered the plaintiff's brother's testimony that the plaintiff "is very socially isolated and less capable than she used to be." (<u>Id.</u> at 21.)  These references in the ALJ's decision demonstrate that the ALJ considered the testimony of these two witnesses, but concluded in light of other evidence presented that this testimony did not show that the plaintiff cannot perform any work.  A review of these witnesses' testimony reveals that the ALJ succinctly summarized that testimony in his opinion.  (<u>See</u> <u>id.</u> at 584-601, Testimony of Michael Sharenow; <u>id.</u> at 607-20, Testimony of Jed Weinstein.)

The plaintiff's reliance on Social Security Policy Interpretation Ruling SSR 06-03p is misplaced.  <u>See</u> SSR 06-03p, "Considering Opinions and Other Evidence from Sources Who are Not 'Acceptable Medical Sources' in Disability Claims," 2006 WL 2329939 (S.S.A. Aug. 9, 2006).  That ruling states that "[i]n considering evidence from 'non-medical sources' . . . such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the

12

relationship, whether the evidence is consistent with other evidence, and any factors that tend to support or refute the evidence." Id. Furthermore, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose." Id.

The ALJ's decision states that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and . . . [SSR] 06-03p." (A.R. at 15.)  The ALJ noted in the "Procedural History" section of his opinion that the plaintiff's boyfriend appeared at the first hearing and testified on her behalf, and that her brother appeared at the second hearing to testify on her behalf.  (Id. at 12.)  Thus, the ALJ acknowledged the nature of the relationship of each of these two witnesses to the plaintiff.  The ALJ considered these witnesses' testimony in the context of the entire record, particularly the reports of medical sources including Dr. Berardi, who had treated the plaintiff for her shoulder injury; Dr. Rotondi, who had performed a mental status evaluation of the plaintiff and had diagnosed her with generalized anxiety disorder and post-partum depression, later modified to major depression; Dr. Rapps, the plaintiff's treating psychologist; Dr. Pearlman, who reviewed reports and records from Dr. Rapps and Dr. Rotondi as part of a long term disability peer review; Dr. Park, who had treated the plaintiff

for depression; and Dr. Boorjury, a primary care physician who had treated the plaintiff.  (Id. at 15-20.)

The Court finds that the ALJ's decision to accord little weight to this testimony of the plaintiff's boyfriend and brother is supported by substantial evidence, as the ALJ explained that social isolation and decreased capability to work are "not the standard" for determining RFC.  (Id. at 21.)  In light of the evidence the ALJ considered from "acceptable medical sources," which includes licensed physicians and licensed psychologists, the Court declines to accept the plaintiff's argument that the ALJ's decision contravened SSR 06-03p.  See Bailey v. Astrue, No. 07-4595, 2009 WL 577455, at *9 (E.D. Pa. Mar. 9, 2009) (noting that, pursuant to SSR 06-03p, "[o]pinions of non-physicians are not entitled to the same weight as an 'acceptable medical source.' . . . However, their opinions may be considered in the determination.") (citation omitted).

**B.   ALJ's Consideration of the Testimony of the Vocational Expert**

The plaintiff also argues that the ALJ "ignored the Vocational Expert's answers to . . . questions from [plaintiff's] attorney."  (Pl. Br. at 15.)  Specifically, the plaintiff challenges the ALJ's step five determination that jobs exist in significant numbers in the national economy that the plaintiff can perform.  (A.R. at 22; Pl. Br. at 15-16.)  See 20 C.F.R. § 404.1566.  The ALJ found that the plaintiff's ability to perform

work at all exertional levels "has been compromised by nonexertional limitations." (A.R. at 22.) Based on the vocational expert's testimony and section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and considering vocational factors including the plaintiff's age, education, work experience, and RFC, the ALJ determined that the plaintiff was capable of returning to work. (Id.)

When an administrative law judge poses a hypothetical to a vocational expert, that hypothetical must include all the plaintiff's impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). If the hypothetical does not include all of the plaintiff's impairments, then it is deficient, and the vocational expert's response cannot constitute substantial evidence.   Id.

The ALJ here asked the vocational expert to opine as to whether jobs would be available in the local or national economy to an individual of the plaintiff's age, education, and work history, "restricted to simple and repetitive tasks . . . in which she must avoid contact with the public and have limited interaction with co-workers and supervisors . . . in a low stress environment." (A.R. at 625-26.) The vocational expert identified scale operator, sorter, and weld inspector as existing jobs such an individual could perform. (Id. at 493, 626.) The plaintiff's attorney then asked the vocational expert whether

such jobs would still be available to such an individual, if that individual also suffered from "very severe" attention and concentration deficits. (Id. at 626.) The vocational expert replied that such severe deficits would render the person unable to work in the competitive labor market. (Id.) Upon further questioning by the plaintiff's attorney, the vocational expert also agreed that obsessive compulsive syndrome and regular sleep deprivation would negatively affect a person's ability to do these jobs. (Id. at 627.)

This Court disagrees with the plaintiff's premise that the ALJ's hypothetical to the vocational expert did not accurately portray the plaintiff's physical and mental impairments. (Pl. Br. at 15.) Such a hypothetical need only "fairly set forth every credible limitation established by the physical evidence." Plummer, 186 F.3d at 431. The ALJ need not "submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). The plaintiff's attorney's hypothetical, which added the impairments of "severe attention and concentration deficits" to the hypothetical posed by the ALJ, included impairments which were not credibly established on the record. (A.R. at 626.) Rather, the RFC assessment indicated that the plaintiff suffers moderate difficulties in maintaining concentration, persistence, or pace. (Id. at 356.)

16

No basis therefore existed for the ALJ to accept the
vocational expert's answers to the plaintiff's attorney's
questions as determinative as to the existence in the national
economy of jobs the plaintiff can perform.  Because the ALJ's
hypothetical took into account the scope of the plaintiff's
established impairments, including her inability to remain
organized (restricting hypothetical work to "simple and
repetitive tasks") or work as a member of a team (restricting
hypothetical work to "avoid contact with the public and have
limited interaction with co-workers and supervisors"), the ALJ's
hypothetical posed to the vocational expert, and the ALJ's
reliance on the vocational expert's answer, are supported by
substantial evidence.  (A.R. at 625-26.)  Cf. Burns v. Barnhart,
312 F.3d 113, 122-24 (3d Cir. 2002) (holding that ALJ's reliance
on hypothetical posed to vocational expert was not supported by
substantial evidence, where hypothetical failed to take into
account plaintiff's borderline intellectual functioning).

**C.   ALJ's Failure to Give Controlling Weight to the Opinion
of the Plaintiff's Treating Psychologist**

The plaintiff contends that the ALJ erred in failing "to
give controlling weight to the opinion of Dr. Rhonda Rapps, a
licensed psychologist who saw [the plaintiff] from November 11,

2003 until some time [sic] after September 15, 2005," contrary to 20 C.F.R. § 404.1527(d).[2]  (Pl. Br. at 17.)

   The ALJ performed an exhaustive review of the plaintiff's medical records.  (See A.R. at 15-21 (discussing plaintiff's medical records).)  The ALJ considered those records in the context of testimony from the plaintiff, her boyfriend, and her brother.  (Id. at 20-21.)  The record shows that the ALJ "considered  the assessment offered by the [plaintiff's] treating psychologist, Dr. Rapps," including Dr. Rapps's opinion that the plaintiff "had trouble concentrating and remembering, being disorganized. . . . She was suspicious and antagonistic, so she would not be able to interact positively with co-workers, bosses or customers/the public."  (Id.)  The record includes several reports by Dr. Rapps, which the ALJ considered.  (See id. at 16, 18-19, 21; 196-97 (undated report of Dr. Rapps diagnosing major depressive disorder); 278-82 (2-24-04 report of Dr. Rapps outlining the plaintiff's symptoms and opining that the plaintiff

_____

   [2] "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

"is incapable of being gainfully employed"); 286-91 (6-14-04 report of Dr. Rapps expressing opinions on the plaintiff's ability to do work-related mental activities); 333-339 (10-22-04 report of Dr. Rapps expressing opinions on the plaintiff's ability to do work-related mental activities).)

The ALJ declined to give Dr. Rapps's opinion controlling weight, concluding that Dr. Rapps's opinion "does not directly involve the issue of 'the nature and severity of an individual's impairment' and it is not consistent with the other substantial evidence of record."  (A.R. at 21.)  See SSR 96-2p, "Giving Controlling Weight to Treating Source Medical Opinions," 1996 WL 374188 (S.S.A. July 2, 1996) (explaining that "[c]ontrolling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources," and that "[e]ven if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record").

The plaintiff suggests that the ALJ rejected Dr. Rapps's opinion in its entirety.  (Pl. Br. at 19.)  The ALJ's decision indicates, however, that the ALJ considered but ultimately "accorded little weight" to Dr. Rapps's conclusion that the plaintiff is unable to work, because "[t]he status of

'disability' is a legal issue and not a medical issue."  (A.R. at
21.)  The Court finds that the ALJ did so properly.  See 20
C.F.R. § 404.1527(e) (reserving the question of whether a person
is disabled and unable to work to the Commissioner opposed to the
opinion of a medical source); SSR 96-5p, "Medical Source Opinions
on Issues Reserved to the Commissioner," 1996 WL 374183 (S.S.A.
July 2, 1996) (distinguishing between treating source opinions
and Commissioner's administrative ruling on RFC and noting that a
treating source's opinion on the issue of whether an individual
is disabled is "reserved to the Commissioner. . . . even when
offered by a treating source, they can never be entitled to
controlling weight or given special significance.").

Because the ALJ's determination of the plaintiff's RFC took
the nonexertional limitations expressed by Dr. Rapps into
account, as well as the other medical opinions in the record, it
is supported by substantial evidence.  Additionally, Dr. Rapps's
own reports appear somewhat internally inconsistent, at least to
the extent that some of Dr. Rapps's conclusions were based on the
plaintiff's complaints rather than objective measures or personal
observation.  (See A.R. at 336-37 (noting that the plaintiff's
"sensorium and intellectual functions" were all "OK," and listing
activities of daily living as taking care of her toddler,
cleaning, cooking, grooming, and grocery shopping, but concluding
that the plaintiff's ability to function in a work setting was

20

very limited).)   The ALJ was not required to accept Dr. Rapps's
conclusion that the plaintiff's impairments rendered her unable
to work or to accord it controlling weight.

**D.   ALJ's Consideration of Plaintiff's Statements Regarding
      Her Condition**

The plaintiff contends that the ALJ rejected the plaintiff's
complaints regarding her condition upon less than substantial
evidence.  (Pl. Br. at 20-22.)   More specifically, the plaintiff
argues that "the combined effect of all of" the limitations and
impairments suffered by the plaintiff "should be seen to
eliminate all jobs," suggesting that the ALJ erred at step five
in determining that jobs exist in the national economy at which
the plaintiff could work.  (Pl. Br. at 21-22.)

This Court disagrees.  The ALJ adequately explained the
basis for its determination that, "[b]ased upon the limitations
that [the plaintiff] described about herself," the plaintiff can
work at a job with limitations.  (A.R. at 20.)  See supra at 14-
17.

The ALJ considered the evidence of record and found that the
plaintiff's "medically determinable impairments could reasonably
be expected to produce the alleged symptoms, but [the
plaintiff's] statements concerning the intensity, persistence and
limiting effects of these symptoms [were] not entirely credible."
(A.R. at 20.)  This determination was based on substantial
evidence.  The record shows that the plaintiff cares for her son

21

and cleans the house.  (Id. at 20, 290, 576-77.)  She has at least a minimal ability to manage money and drive a car, though she sometimes gets distracted while driving.  (Id. at 290, 577, 587, 590, 609-10.)  Although depressed, the plaintiff is neither suicidal nor psychotic.  (Id. at 287, 581.)  Her daily medications include an antidepressant and a sleep aid, which the plaintiff testified have helped her.  (Id. at 580-81.)

The applicable regulation states that an ALJ must consider a plaintiff's statements about his or her symptoms, such as pain, and any description of how those symptoms affect a plaintiff's ability to work.  20 C.F.R. § 404.1529(a).  "However, statements about [one's] pain or other symptoms will not alone establish that [one is] disabled; there must be medical signs and laboratory findings which show that [one] has a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged" when considered with all the other evidence.  Id.  The applicant for benefits bears the burden of producing medical evidence to support subjective complaints.  Arroyo v. Comm'r of Soc. Sec., 82 Fed.Appx. 765, 768 (3d Cir. 2003).

The Court finds that the ALJ's credibility determination, resulting in a finding that the plaintiff "can still function well enough to work, albeit at a lesser stressful or socially interactive manner than she used to do," was supported by

22

substantial evidence.  (A.R. at 21.)  For example, Dr. Rotondi, a psychologist who had treated the plaintiff briefly in 2003, opined that despite her depression and high anxiety level, the plaintiff's ability to do work related activity was not significantly limited.  (Id. at 296-97.)  Dr. Rapps, as discussed above, believed that the plaintiff's complaints were substantiated and resulted in significant limitations in her ability to work, but the limitations noted were taken into account in the ALJ's determination of the plaintiff's RFC.  (Id. at 336, 21.)

Plaintiff's complaint that it is "difficult to imagine a mundane, simple repetitive job that a person with [the plaintiff's] personality traits could tolerate on a regular and sustained basis" implicates the vocational expert's representations regarding available jobs, not the ALJ's assessment of the plaintiff's credibility.  (Pl. Br. at 22.)  See Davis v. Astrue, No. 07-1273, 2008 WL 852451, at *5 (D.N.J. Mar. 28, 2008) ("It is clear from the ALJ's decision that plaintiff can only engage in employment that is strictly sedentary that he took all the evidence concerning plaintiff's leg pain into consideration.").

## CONCLUSION

For the reasons discussed <u>supra</u>, the Court will affirm the Commissioner's decision denying the plaintiff's claim.  The Court will issue an appropriate order.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:**    December 3, 2009